Thank you, Your Honor. Good afternoon, and may it please the Court. My name is Andrew Guthrie, and I represent the appellant Landry's. I reserve five minutes of my time for rebuttal. This is an insurance coverage case. The policy language at issue here covers suits and damages because of personal and advertising injury. Personal and advertising injury includes injuries arising out of the oral or written publication of material that violates a person's right of privacy. The underlying allegations here, which we've referred to as the Paymentech complaint, triggered both prongs of that coverage provision, and thus ICSOP's duty to defend under Texas's broad eight corners rule. First, Paymentech alleges various publications of private cardholder information in a data breach. Second, those alleged publications, if you take them at face value, almost inarguably violated the cardholder's privacy rights in their personal information. And with those two prongs satisfied, ICSOP's duty to defend is triggered as a matter of law, and the district court erred in granting a contrary summary judgment. So I think, as you know, probably the biggest dispute in this case is whether Paymentech alleges a publication of the credit card data. It does. And there are really two pathways I think the court can go to get there and to reverse the underlying summary judgment, either of which would be sufficient. The first path would be to say, look, we know there's a dispute about the ordinary meaning of publication, but we don't have to resolve that dispute because even under ICSOP's proposed definition, Paymentech alleges a publication. That is a widespread or general dissemination of the payment data by the hackers to the third-party retailers at which the alleged unauthorized charges were made. It doesn't have to be to the public at large, though? It does not, Your Honor, respectfully, under the ordinary meaning of publication. Well, first of all, I would say, Judge Smith, I don't even think they're making that argument, that it has to be to the whole public. If you read their brief— But that's what the Texas Supreme Court said in the Industrial Foundation of the South case. Your Honor, I don't believe I'm familiar with that case. Can you tell me what the Texas Supreme Court held? It said that publication in violation of the right to privacy is a specific tort that requires a communication be made, quote—well, actually, the quote only says—excuse me, the part I was reading was just an intro. Quote, to the public at large, such that the matter becomes one of public knowledge. That did not happen here. It did not become a matter of public knowledge. I guess I would push back, Your Honor, on the ordinary meaning of publication in the context of these insurance policies. Even the case that they rely on, the Nutmeg case, just talks about a disclosure to many people. I think the definitions that we've cited in our brief, Judge Smith, may be where the distinction is. And having not reviewed that case, I'm sorry, I can't quite make the distinction. But the distinction may be that when you talk about a communication to the public, the definitions, the ordinary meaning of the term have said that that includes any parties or parties that I think can be treated as the public. I don't think it has to be a generalized dissemination to the entire public. Think about a pamphlet that someone had printed and was handing out on the street, and maybe it was a slow day and they only handed it out to eight people. I think under the ordinary meaning of the term publication, that would be a publication, even though it wasn't disseminated to the entire general public. It was only disseminated to a few people. And we've cited you to the cases in our brief. Judge Smith, these are not – this is not just a handful of cases. I mean when we're talking about the ordinary meaning of publication in an insurance contract, we have cited you three or four or five cases that say a publication, well, it does include to the public at large. That is one definition of the term. The ordinary meaning is broader. So this is a liability policy, right? Yes, it is, Your Honor. So I take it the way liability policies work, the insurer and the insurer are getting together to figure out what various torts and other legal cause of action that the insurer has agreed to cover. I believe in general that's the way it works. I mean I think you're on this as well as I do, that sometimes the insurance policies are what they are, and you either take them or leave them. I'm not sure. Every provision is specifically – I'm not trying to be tort-specific, but what are the lawsuits that you're going to protect me against and what are the lawsuits you're not protecting me against? Okay, so I read 14. It sounds like we agree 14 is basically a series of causes of action that one could theoretically be sued for. What does the right of privacy cause of action – what does that cover? I was a little surprised I didn't see more briefing on sort of the scope of the right of privacy doctrine. Well, I mean I – thinking back to law school, right of privacy covers a lot of things. It covers intrusion upon seclusion. It covers publication of private facts. There are a number of different causes of action that it could cover, but I think one thing – Does it cover ID theft? Excuse me? Does it cover ID theft? I don't know that I know that, Your Honor. I know that it – But isn't that a problem for you then? It's not, Your Honor, and here's why. When we are talking about the duty to defend under Texas law, what is relevant is not whether you can get within a cause of action that is stated in the complaint. I think this court said in the Greentree Financial case – that was – St. Paul was the insurance company. Greentree Financial was the appellee, I believe, in the opinion. And that was a case where this court rejected a pretty similar argument to the one that you're talking about, is that when we say offense in this kind of coverage language, that doesn't mean that the underlying allegation has to state all of the elements of a cause of action that's covered. What we know under Texas law is the question is, do the facts alleged in the petition, do they present a matter that potentially falls within the scope of this coverage? And so the result in the Greentree Financial case, there the underlying allegation was one for unfair debt collection. The petition very clearly said, I have a cause of action for unfair debt collection. You've been calling me all the time. You've been hounding me. You've been making rude and abusive comments. Debt collection wasn't covered in the policy at issue there, but invasion of privacy was. And what this court said was even though the underlying plaintiff had said nothing about invasion of privacy, those facts alleged could constitute an invasion of privacy. Okay, but do you have a case where a customer, let's say I'm one of Landry's customers, as I actually am in real life, and I had lost my, my information was hacked, misused, false charges were made to my credit card. Could I sue Landry's as a right of privacy tort? Well, I think those causes of action are out there. Right, but is it, is it known as right of privacy? I mean, I guess when I'm, I'm thinking back to sort of my, you know, law school or bar exam teaching about this weird doctrine that's called right of privacy in terms of common law or restatement. But it really sounds more like right of publicity. You know, I think of misusing LeBron James's identity for your own personal gain. That's right of publicity, right of privacy. That's not really this case, is it? Well, I would just say, Your Honor, when we read the policy broadly to encompass everything that a right of privacy can encompass, which is what we do when we read insurance policies, we construe everything in favor of the insured. Right, but reasonably. Sure. Right. I mean, I see a list of torts, and I see this tort in particular as one involving the element of publication. I don't think of ID theft as typically a publication type of tort. That sounds more like the traditional right of publicity. You publish my likeness, and that's my value. You know, you didn't get my permission to use my face or my name to sell your product. And I think, Your Honor, this gets back to how do we read insurance contracts. I hear Your Honor saying the publication sounds like a publicity tort. When we read insurance contracts, we give terms their ordinary and generally accepted meaning in the context in which they're used in the policies. Right, and this context is tort liability, guarding against legal cause of action. I just don't think that this court's precedent is or Texas law is to impose a cause of action on that term. I think you give it the ordinary meaning. The ordinary meaning is a publication of material that violates a person's privacy rights. I mean I think if you look at the cases, what the cases say is privacy is seclusion. Privacy is also a secrecy. It's a right to keep your personal information secret. And so one case I would reference for Your Honor is the Aspen Way decision. That was the decision where a federal court found that this provision or something very similar to it was satisfied. The underlying facts of the case was not a publication, I think, as Your Honors are talking about it. No information was publicly shared. What was at issue there is there was a spyware program on a computer, and a customer bought a computer from an errand store. There was spyware on that computer. The allegation was a third-party company used that spyware to take information off the customer's computer, and that was the alleged publication. So it sounds to me like in the context of this contract that you are using publication as being 100 percent synonymous with the word disclosure. Is that right? How would a publication be any different from narrower or broader than a disclosure? Your Honor, I guess I would say publication means a communication to any party. So in the sense that the information is disclosed to another party, I guess I would say Your Honor is correct. I mean, I guess the follow-up would be so that any—I know that doesn't use the word disclosure. That's my term, but any disclosure would qualify under this policy. That's right, Your Honor. A communication of words or information to any party. And I think that is consistent with the ordinary meaning of this term in the cases that we've cited to Your Honors. I think at a minimum, and particularly in light of those case authorities, in light of the dictionary's definitions that construe the term this broadly, I think at a minimum it's a reasonable interpretation of what does the ordinary meaning of publication mean. And duty to defend is any time it's a reasonable interpretation. That's exactly right, Your Honor. I think that under an insurance contract, we construe the meaning of the term in favor of the insured. I would also say I think that that is a reasonable interpretation of the term in the context of these policies as a whole. Judge Ho, you talked about the context of this provision. I would also point you to several other places in the insurance agreement that I think give some evidence of what the parties intended the term to mean in this policy. So if you look at subsection D, that's the subsection above. The parties intended to cover the oral or written publication, so it's the exact same term, of material that slanders or libels a person. And we know, and we cited this in our brief, that under the law of defamation, a publication occurs when defamatory speech is uttered to a single person. So I'm curious why this doesn't cut against you because when you have the term publication, we know that slander and libel, that's not a tort unless you satisfy the element of publication. That's simply not true of data privacy type statutes. Well, Your Honor, what I would say is that if the right of privacy is a common law doctrine that just talks about the disclosure of private facts, which I believe that is a common law tort. I agree. Then you have to have a publication to some other person who's not supposed to have a right. But I think there's no evidence or no case law that anybody's mentioned where that right of privacy action is used in the data theft – sorry, the ID theft context. It's about using people's likeness, about embarrassing false light. That's sort of all the things we learned in bar class. Sure, Your Honor, and I'd point you back to the Aspen White case. That was a case where the customers were suing the errand store that had sold the computer. And I don't remember precisely what causes of action they were asserting, but the gist of the complaint was you took my data and you shouldn't have. And you're saying that court was a right of privacy case as opposed to a – That's what I'm saying, Your Honor. I don't remember precisely what the – But it matters, at least based on the purpose of my question. If this is a right of privacy case, then I think you're right. My concern is this is not a right of privacy case. Because the right of privacy you're suggesting requires all of the causes of action of the right of privacy? That's my understanding of that term, at least in common law. Yeah, and so what I would say, Your Honor, is I just don't think that that's how we read the insurance coverage here, that we give it its ordinary meaning. We don't sort of – In the traditional ID theft type cause of action, because I know there are various state and federal ones, is publication typically an element the way it is in slander and libel? Your Honor, I have to plead ignorance. But again, I'm suggesting that if the common law tort is sharing private facts, and I do believe that's a common law tort. I guess what I'm thinking is in the ID theft fact pattern, you absolutely – it's about using, transmitting somebody's private information without lawful authority, something like that. It's typically not publication. But in order to get to the ID theft, there has to be a public – and I see my time is running out. Can I complete my answer? In order for there to be an ID theft in the first place, there has to be a transmission of the words or the data to the third party who has taken the data. And in our view, that would be a publication under the ordinary meaning of this policy. All right. Thank you, Mr. Guthrie. You saved time for rebuttal. Ms. Hogan? Good afternoon, Your Honors, and may it please the court. My name is Laura Hogan, and I represent the insurance company of the state of Pennsylvania. As the court below held, in this case, there is no publication or public disclosure element, and as an independent point, there's no violation of a person's right to privacy that's being vindicated in the payment tax suit. Counsel, do you dispute that I have a privacy interest in my credit card data? I don't dispute that you have a privacy interest in your credit card data. Great. So that seems like that takes care of that entire point. It seems to me as I'm looking at 14e, oral or written publication in any manner, we need to talk about publication. So we'll get to that. That violates a person's right to privacy, right? So if my right to privacy and my credit card data is breached by publication, then that satisfies e, right? The only question is whether the payment tax suit is seeking damages that arise out of the right to privacy. That's what I understood you to argue in your brief. Your Honor, I would say, first of all, that there's no publication here. Perfect. So let's talk about publication. What is the distinction between a publication in the libel context and a publication in the right to privacy context? So I have to apologize, Your Honor. I'm not sure I can answer the question about a distinction between the right to libel and the right to privacy. Does it matter? I can say. Why would it matter? Because it seems like the publication term in d and the publication term in e, as your friend on the other side just said, are exactly the same. They may be, and in both cases they require something that I think perhaps some of the other questions were going to here. They require a reveal or a display. We don't have that. We have theft. Landrys was a victim of theft. If you have a private diary that you've written and someone comes into your home and steals it and it contained untrue, embarrassing personal facts against someone else and the thief read it, you are not liable for slander or libel or violation of the right of privacy through publication of material. So let's talk about the theft requirement. So imagine instead of having the data breach and stolen IDs and all this stuff, what if the following happened? What if one of the Landrys, someone working in a Landrys restaurant, wrote down on a little sheet of paper credit card data information, including internal verification codes, expiration dates, three-digit CCC codes, all that CCP codes, put it on a sheet of paper and then posted it near the restrooms of the restaurant? Would that be a publication? Your Honor, I think you're closer. It might be. It's some type of public display or reveal. That's not what happened here. Well, there's an interesting question about what happened here, and I'm not sure it matters because all it seems to matter to me is what the complaint in the payment text suit says. And I'm looking at paragraphs 18 and 19 of the payment text suit, and both of them say that effectively what the breach was, what Landrys allegedly did, it was a breach of its contract with the credit card companies, was that it exposed this data as it was, quote, being routed through the affected systems. Right? So they failed to basically cover it up such that people couldn't see it. They effectively posted it on a wall, a bulletin board in front of the restrooms. Your Honor, I don't believe that's what the complaint alleges. Help me understand the language. I think it alleges that the credit cards were processed in the normal course through a credit card processing program in which there was no public display. There was a use of the credit card. Now, they claim that that use of the credit card wasn't properly encrypted up to the top standards that Visa and MasterCard required, but there's no public display. There's no Internet posting. The portal health care case involves a situation, for example, where the policyholder unintentionally but posted publicly on the Internet the private health information. I'm looking at 19. It says the data breach involved the installation of a program on payment processing devices at certain Landry's properties, and this program was designed to search for data as it's being routed through the system and to collect it. Right? So it's effectively malware, I guess, or I don't know if that's the right software term, but it's some kind of program that as the little numbers are going through the pipes in the Landry system, sucks them out, collects them, and then lets some hacker use them. Snuck in and stole it. And how is that different than the server just posting the numbers on a bulletin board? I think there's a very substantial difference between being the victim of someone sneaking into your system and stealing information versus publicly posting it. And I think it's that essential element of display or reveal or publicly disclosing the information that is the essence of publication. I'd like to use Mr. Guthrie's example if I may. He explicitly said that it's a communication to a third party, and his words were, to parties that can be treated as the public. And if I give out a pamphlet on the street, even if I meant to give it to a whole bunch of people and I gave it to eight, I gave it to the public. I displayed it. I revealed it. I took action to publish. That's not what happened here. What happened here was what was meant to be a private transaction was hacked. Indeed, that's sort of the concept of those actions, right? You're trying to get information out to the world. You want to use likeness to make more money. You want to defame people by telling the world how bad they are, whereas this is more of a surreptitious theft fact pattern where you don't want anybody to know because you want to be the one to maximize the use of the ID information. Exactly so, Your Honor. I think that's a fundamental difference between the two. But that's the thing. That's why I keep coming back to the distinction in publication definition because if it's agreed, and I don't take it to disagree. The friend on the other side clearly made this argument in the brief and today that it is a publication in the defamation tort to communicate false information to one person. Then why is it not a publication in this subsection D sense to communicate the information to one hacker? So I think there are several pieces there. First of all, Landry's didn't communicate the information to anyone. The hacker stole it. I think that's different. Number two, Landry's use of the credit card was authorized. It wasn't a violation of privacy rights to process an approved credit card transaction. That's what Landry's did through a system that was not designed to give it to the public. It may have been not sufficiently protected against a thief, but it wasn't designed or it didn't display publicly the information. Someone was able to break it, but it wasn't posting it on the laboratory door or posting it on the street. But why would that matter? Because the only question is whether it's a publication.  So then my question is if publication simply involves communicating the underlying information to someone who's not supposed to have it, that's the thing that unites those two pieces of the policy. The one for defamation torts and the one for privacy torts is the word publication of information in any manner. It's still the same thing. You're communicating it to someone who shouldn't know it. I don't believe they are. I don't believe they're communicating it to someone who shouldn't know. The only communication that took place was to someone who should know. The credit card processor. Someone else went in and took it, but they didn't communicate it to anyone else. So if I'm understanding that, in the hypothetical about posting the credit card information on the bathroom, like in the wall on the way to the bathroom, there's no actual publication in your view until someone comes by and sees it? I don't think it's a question of whether someone reads it or not. That could be an element. But in any event, there's no publication because there's no effort. There's no action to communicate. There's no display. There's no reveal of the information here in any of the transmissions that Landry points to. Your Honor mentioned the in any manner language, and I want to be clear that that language and the fact that the coverage territory includes personal and advertising offenses that take place through the Internet or electronic communication go to the means or methods of publication. So someone who publishes a book on the Internet under this policy is equally at fault, covered within the offenses as someone who publishes it, posters, writings, etc. It doesn't change the essential element of what is the publication. It just means that if what is publication takes place in that fashion, then it's covered just as it would in a traditional fashion. And I also want to bring the Court back to the nature of the underlying claim here because I think you made some assumptions about what's at issue in some of your questions, Your Honor, that we would dispute. The nature of the payment tech claim is an independent reason why this does not qualify for coverage. It's not a suit about publication in violation of a person's right of privacy. It's a suit in which the credit card processor seeks to recover for financial exposure, an assessment charged in turn by Visa and MasterCard. See, this strikes me as really difficult. You rely on this District of Arizona case that has a different policy language. And the thing is, in this case, the policy that your client wrote says that the alleged injury must, quote, arise out of. So if you have conceded to me first thing before we started the rest of the argument that I have a privacy interest in my credit card data, then the exposure of my credit card data, everything else that happens, arises out of the breach of my credit card data. So I don't understand what that gets you. To be really clear, the language requires that the damages be sought because of personal or advertising injury. And personal or advertising injury is, in turn, where the words arising out of comes into. So the question of what the payment tech suit is is a question of whether it is because of personal injury. It's not because of personal injury directly or indirectly. It's because of a commercial relationship between Landry's and Payment Tech, in which there was a contract, in which there was a commercial agreement that they would indemnify that. You're saying, in other words, this is an indemnity case? It's an indemnity case. Okay, but to me, that's maybe a good argument for you, maybe not. It depends on if it's an indemnity for what. To my mind, if this was an indemnity agreement to backstop Payment Tech for a right of privacy case, then I think I would disagree with you. And I don't think it is an indemnity. But it's not. That's my take. What is this underlying? It's an indemnity case. It doesn't seem like, I mean, because the bank is not suing for right of privacy. It's suing for what? I'm actually not clear about this in the record. It's suing for certain assessments that it owes to MasterCard and to Visa. And those assessments are based on various formulas. Why does the bank have a right to money from Payment Tech? I'm assuming what's going on is the customer asks the bank, you know, this is not my charge, I'm disputing this charge. The bank tells the customer, don't worry, I'll give you the money back. I assume that is correct. I'm not sure, Robert. Oh, okay. In any event, I'm curious. Why is the bank asking Payment Tech for money in the first place, such that Payment Tech seeks indemnity from Landry? Right. So there are all kinds of things that could be the case in terms of the record. There could be exposure that might create fraud, et cetera, without actual proof of fraud or use of the card. And there isn't evidence of use of the card. Okay. So there's that. But the way the deal works is that the bank that issues the money on behalf of MasterCard or Visa incurs certain costs. They may incur costs to issue new credit cards because of the potential that the card could be used. They may have an increased call volume. They may have fraud programs. They package those costs into a deal with MasterCard and Visa in which proxies are created that are assessments. Those assessments are then charged against the bank that got the payment, Chase, J.P. Morgan, Payment Tech, which in turn has an indemnification agreement with Landry's, who uses their services to process the payment. So let's say there's no data breach of any kind. What happened instead is Landry's correctly charges me, the customer, for $100 in stakes, but for some reason ends up doing it a double charge, which has actually happened to me from time to time. So there's no I.D. theft of any kind. I'm assuming you'd still have the same scenario here where a credit card is going to help me out, undo the charge, and then is going to tax Payment Tech for the error. Okay. So in that sense, this is not about privacy at all. Correct. It's an indemnification agreement. It's based on an undisputed – I'm sorry. It's based on a disputed charge, but the dispute could arise from any number of things. It could be breach of data. It could be something else. Yes. It could be a mistake. I'm completely confused by this answer, that the allegation in the Payment Tech suit is that Landry's had an obligation to perform certain security functions on processing of the credit card data. It has nothing to do with Judge Ho's – maybe I'm misunderstanding what your response was to Judge Ho's question. But if there's a double charge, that doesn't in any way breach the – that would never give rise to the same complaint that I'm holding in my hand because this is all about data security and preventing waiters from posting stuff on the bulletin board or allowing people to install malware that collects the credit card data. There is an allegation that Landry's didn't have the highest security and that failure to have that security level as required under the agreement resulted in a duty to indemnify. In fact, that's the only allegation because when it goes – when the two companies are going together to Visa and MasterCard to go through the exhaustion process and the appeals process, all of the information is about what level of care was Landry's using to prevent the publication of private data. And interestingly, that is extra record and not directly in the complaint. But the bottom line is that the fact that a higher level of protection is required doesn't make that suit a personal claim for violation of privacy. It's still a commercial suit about what you should do to protect me and whether you did it. I was just confused by your answer to Judge Huntle and I just wanted to make sure we were all on the same page. Yeah. So the facts in the payment tech complaint suggest it is – there's nothing in there that suggests that payment tech is seeking to recover or could seek to recover for damages for publication in violation of a person's right to privacy. Neither payment tech's right to privacy, nor Visa and MasterCard's right to privacy, nor the other bank's right to privacy is at issue, nor is it even a derivative or representative claim on behalf of a member of the public. There's a very big difference between what that underlying case is, which is not a case about violation of a right to privacy, and an individual's claim, you used my likeness, you used my information improperly, you published, you displayed my credit card in a public setting so that there was a reveal of the information. So again, I think with respect to publication, there are several elements here. Theft is not a publication and no reasonable understanding of the word publication involves theft. Use of a credit card, certainly approved, permitted use of a credit card is not publication. It is processing in a manner to one place, not to a public display, not with the intention of any public display, not without an understanding and an agreement that it's going to be kept confidential in the processing mechanism. That's not publication. So nothing there is publication. There simply is no publication element we submit, and similarly there is no privacy element we submit that's at issue in this dispute. Fundamentally, the policy does talk about offenses. It talks about publication of material in any manner that slanders or libels a person or organization or disparages a person's or organization's goods or services, oral or written publication of material that violates the right of privacy. We're talking about publishing something that damages a person's reputation or that violates a right to privacy like disclosure of private facts, intimate personal details, private medical or financial information. That's not what we have here. I think this case is so far from a reasonable reading of that policy language that it should not even be a close case. There's no reveal or display of the information we submit. So we think that neither the element of publication nor the element of violation of the right of privacy is there. We would point the Court to two cases that we think are the closest two cases, InnoVac International v. Hanover Insurance. That's a case that individuals whose Social Security numbers, addresses, birthdates, and more were exposed, sued a payroll company that was the victim of the data breach, and the Court held nowhere in the underlying complaint do the underlying claimants contend their PPI was published, whether by third-party hackers or by InnoVac. And that's 280 FSUP at 1347. And also St. Paul Fire and Marine v. Rosen Millennium. That involved a situation where there was no coverage for a claim by a hotel against its data security firm after its payment processing system was breached because the theft of data did not meet the policy's personal injury offense language. In that case, there was different language. The language included the offense of making known to any person or organization covered material that violates a person's right of privacy, but importantly, for purposes of the decision, the parties and the Court agreed that in the context of that case, making known, quote, is synonymous with publication, and it did not encompass data theft. And that's 337 FSUP at 1184. Finally, I'd like to discuss a case which Mr. Guthrie decided and which Landry's has relied on, and that's the American Economy Insurance case v. Aspen Way, and it's found at 215 Westlaw 5680134. And that is a really interesting case here. It's a case that involved the computer rental company that had spyware on the computers that went out, and through the spyware it captured photographs, keystrokes, screenshots of its customers' computer use. And there were two suits in the case. One was a private party class action suit in which individuals alleged their information was being captured and it was repeatedly transmitted via e-mail and forwarded to various persons and locations, and that the transmission of the information to third parties via e-mail created increased risk of fraud and identity theft. And there was a second suit. The second suit was brought by the state of Washington, and it alleged a violation of the Consumer Protection Act in unfair gathering of extremely private information. The Court said the private suit alleged publication in the e-mail transmissions of the information that had been gathered to third parties. And it said the state of Washington suit did not allege the requisite publication to trigger coverage for personal and advertising injury. That suit involved the collection and retention of information. It didn't allege Aspen Way disclosed private information to a third party. The transmission of collecting... Your time has expired now, Ms. Foggin. ...was in publication. Thank you. So two different cases there. Thank you. Okay. Mr. Guthrie for... Rebello? Thank you, Your Honor. I'm glad she went back to the Aspen Way case because I think that last comment reveals a pretty big blind spot in the arguments that you just heard, and I think it's an important one. My friend on the other side has said several times that there is no evidence or allegation here that the data was disseminated by the hackers to third parties. I can put aside evidence. This is a duty-to-defend case based on the allegations. Whatever evidence was and wasn't developed doesn't matter. So let's look at the allegations. Judge Oldham was pointing to the allegations about the data breach in which allegedly millions of cardholders' private information was stolen. That's paragraph 16. Paragraph 18 alleges that there were unauthorized charges on these credit cards. And then we get into what was going on with the credit card companies. And paragraph 22 I would point you to. Paragraph 32 describes what these assessments are like from the credit card companies, and it says that Visa and MasterCard get these assessments back from the payment processing companies, and part of what that is to compensate for is fraud losses, is these illicit transactions made on the stolen data. And we know that at least potentially that's what was going on here. That's how we got to the $20 million price tag. And so based on those allegations and reading the complaint broadly in favor of coverage, as we do under the Eight Corners rule, there are certainly allegations that, or at least it is a reasonable inference, that the hackers disseminated the data to the third-party retailers. That is the only way that unauthorized charges can be made. They didn't dispute that logical principle in their briefs. I didn't hear my friend on the other side do that today. So when she's talking about a reveal, it needs to be revealed to someone else. There is an allegation here that the hackers disseminated the data to the third-party retailers. That is sufficient to trigger the meaning of the term publication. So basically your notion then that any time you use information to do a transaction, that's a publication? Yes, Your Honor, that any time the data is transmitted to another party, that is a publication. Every time I lawfully, imagine a fact pattern that has no fraud or theft whatsoever. I use a credit card today to buy lunch, and all the transactions happen. That's a publication. It is a publication. It would not trigger coverage here because if your credit card transaction went... Well, it's lawful. There would be no violation. My point is that is a publication under your theory. Agreed. Obviously there are probably trillions of these publication acts every day or certainly every year. That's right, Your Honor. Everybody's publishing. That is a publication, and I would say I think what this conversation reveals is that we do have different levels of publication here. There's the initial publication. There is the publication to the hackers. And whether it was intentional or not, the data was transmitted to the hackers by the operation of the spyware program. And then we have the third level of publication, which I was just referencing. It's the publication from the hackers to the third-party retailers. Any of those is sufficient to trigger the publication prong. The next point I want to make, we talked a lot about this is an indemnity case. This is a breach of contract case. Under Texas law, the nature of the claim as alleged in the underlying complaint does not matter to the duty to defend. We look at the facts alleged. We ask, do those facts alleged present a matter  So then we ask, what's the scope of the coverage? And Judge Ho, I think this goes to your questions, that the scope of the coverage covers injuries arising out of the oral or written publication of material that violates a person's right of privacy. I thought I heard you, if not concede earlier at least, you've got no cases using the privacy tort to cover causes of action of this nature. This is an ID theft case, not a privacy case. The privacy tort does not need to be asserted in the underlying action for the injuries to arise out of. I'm not saying that it has to. I think you're misunderstanding my point. Let's say there was a customer suit. It doesn't sound in privacy. You have to find some statute that protects it from ID theft. I thought I heard you agree to that. If I did, I misspoke, Your Honor. Just an example, looking at the restatement, the restatement talks about the right of privacy and it has nothing of this kind. I think we had that exchange earlier. It's about use of likeness. It's about false light. It's not about ID theft. That's, in fact, why statutes have been passed to fill the gaps that common law doesn't provide. My understanding of the common law is that there is a tort cause of action for disclosure of private facts, and particularly if we look at the disclosure from the hackers to the third-party retailers, that is a disclosure of private facts. Do you have a case using the privacy doctrine that we're talking about to vindicate ID theft concerns? I'd point Your Honor back to the Aspen Way case. That's the case where the private people sued for the theft of their data from the computer. And, Your Honor, see, my time is up. Unless there are any further questions, I'll sit down. Yes, your case is under submission and the court is in recess.